# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DANIEL SPOONAUER and BENJAMIN FOSTER, Individually and For Others Similarly Situated<br><br>v.<br><br>TRAFFIC MANAGEMENT, LLC f/k/a TRAFFIC MANAGEMENT, INC. | Case No. _____<br><br>Jury Trial Demanded<br><br>FLSA Collective Action<br>Rule 23 Class Action |

## CLASS AND COLLECTIVE ACTION COMPLAINT

### SUMMARY

1.　　Daniel Spoonauer (Spoonauer) brings this class and collective action to recover unpaid wages and other damages owed by Traffic Management, LLC f/k/a Traffic Management, Inc. (Traffic Management) under the Fair Labor Standards Act (FLSA), New York Labor Law (NYLL), Pennsylvania Minimum Wage Act (PMWA), Pennsylvania Wage Payment and Collection Law (WPCL), and New Jersey Wage and Hour Law (NJWHL).

2.　　Benjamin Foster (Foster) joins Spoonauer for the purposes of his FLSA collective action claims and also brings class action claims to recover unpaid wages and other damages owed by Traffic Management under the Virginia Wage Payment Act , Va. Code § 40.1-29 (VWPA) and the Virginia Overtime Wage Act Va. Code § 40.1-29.2 (VOWA).

3.　　Spoonauer and Foster (collectively, Plaintiffs) worked for Traffic Management as traffic controllers.

4.　　Traffic Management paid Plaintiffs by the hour.

5.　　Plaintiffs regularly worked 8 to 18 hours a day and 5 days a week.

6.　　But Traffic Management does not pay Plaintiffs for all hours worked, in violation of the FLSA, NYLL, PMWA, WPCL, NJWHL, VWPA, and VOWA.

7.    Instead, Traffic Management required  Plaintiffs to collect equipment from the company yard, pick up a company vehicle, drive to the job site prior to his shift and then return the company vehicle to the company yard, off the clock and without compensation(Traffic Management's "off the clock policy").

8.    Traffic Management thus did not pay Plaintiffs for this time.

9.    Further, despite NYLL § 195(3), Traffic Management does not provide accurate, complete, and/or compliant pay statements.

10.    Nor does Traffic Management provide the accurate, complete, and/or compliant written notices required by NYLL § 195(1).

11.    Traffic Management's failure to provide accurate, complete, and/or compliant itemized wage statements and/or written notices cause its employees (including Spoonauer) to suffer concrete and cognizable injuries, including obscuring the wages they are lawfully owed and preventing them from determining the wages they are lawfully owed, preventing them from noticing improper deductions from their wages, and by delaying their ability to remedy Traffic Management's underpayment of their wages.

### JURISDICTION & VENUE

12.    This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

13.    This Court has supplemental jurisdiction over the state law subclass claims because these claims arise from a common nucleus of operative facts. 28 U.S.C. § 1367.

14.    This Court has general personal jurisdiction over Traffic Management because it is registered to do business in the Commonwealth. *See Mallory v. Norfolk Southern Railway Co.*, 600 U.S. 122, 134 (2023); *see also* 42 PA. CONS. STAT. § 5301.

15.     Venue is proper because a substantial part of the events or omissions giving rise to the claim occurred is in this District and Division. 28 U.S.C. § 1391(b)(1).

16.     Specifically, Traffic Management implemented its off the clock policy in Bucks County.

**PARTIES**

17.     Spoonauer worked for Traffic Management as a traffic controller from approximately January 2023 to April 2024 in Pennsylvania, New Jersey, and New York.

18.     Foster worked for Traffic Management as a traffic controller from March 4, 2025 through January 21, 2026. Foster initially worked primarily out of Traffic Management's Lynchburg, Virginia location servicing Virginia jobs, but later worked in other states including Pennsylvania, Georgia,  South Carolina, Kentucky, North Carolina, and Tennessee.

19.     Throughout their employment, Traffic Management employed Plaintiffs in accordance with its off the clock policy.

20.     Spoonauer's written consent is attached as **Exhibit 1** and Foster's consent is attached as **Exhibit 2**.

21.     Plaintiffs bring this class and collective action on behalf of themselves and similarly situated Traffic Management employees.

22.     The putative FLSA collective of similarly situated employees is defined as:

> **All hourly employees employed under Traffic Management's off the clock policy during the past 3 years through final resolution of this action (the "FLSA Collective Members").**

23.     Spoonauer also seeks to represent a New York class under FED. R. CIV. P. 23.

24.     The putative New York class is defined as:

> **All hourly employees in New York who Traffic Management employed under its off the clock policy during the last 6 years and**

**228 days[1] through final resolution of the Action (the "New York Class Members").**

25.     Spoonauer also seeks to represent a Pennsylvania Rule 23 class defined as:

**All hourly employees who worked in, or were based out of, Pennsylvania[2] who Traffic Management employed under its off the clock policy during the last 3 years through final resolution of this action (the "Pennsylvania Class Members").**

26.     Spoonauer also seeks to represent a New Jersey Rule 23 class defined as:

**All hourly employees in New Jersey who Traffic Management employed under its off the clock policy at any time during the past 6 years through final resolution of this action ("New Jersey Class Members").**

27.     Foster also seeks to represent a Virginia Rule 23 class defined as:

**All hourly employees who worked in, or were based out of, Virginia who Traffic Management employed under its off the clock policy during the last 3 years through final resolution of this action (the "Virginia Class Members")**

28.     The FLSA Collective Members, New York Class Members, Pennsylvania Class Members, New Jersey Class Members, and Virginia Class Members are collectively referred to as the "Hourly Employees."

---

[1] Governor Cuomo's Executive Orders tolled the NYLL's statute of limitations during the COVID-19 pandemic for 228 days. *See Brash v. Richards*, 195 A.D. 3d 582, 2021 WL 2213786, 2021 N.Y. Slip Op 03436 (App. Div. 2d Dep't June 2, 2021) (holding executive order tolled rather than suspended the statutes of limitations); *McLaughlin v. Snowlift Inc.*, 71 Misc. 3d 1226(A) (Sup. Ct., Kings Cnty. 2021) (calculating that, together, Governor Cuomo's Executive Orders lasted 228 days).

[2] The PMWA and WPCL apply to Pennsylvania workers, regardless of where the work is performed. *Truman v. DeWolff, Boberg & Assocs., Inc.*, No. 07-01702, 2009 WL 2015126, at *2 (W.D. Pa. July 7, 2009) ("In light of the FLSA's explicit recognition that states may offer greater protections to its employees than the FLSA, we are reluctant to find an unstated foreign-work exemption in the PMWA based solely on the fact that the FLSA contains such an exemption."). Courts apply a five-factor test to determine whether workers are based in Pennsylvania, which include (1) employer's headquarters; (2) employee's physical presence working in Pennsylvania; (3) extent of employee's contact with Pennsylvania Employer, i.e., reporting, direction, supervision, hiring, assignment, and termination; (4) employee's residence; and (5) employee's ability to bring her claim in another forum. *See Matthews v. BioTelemetry, Inc.*, No. CV 18-561, 2018 WL 3648228, at *3 (E.D. Pa. July 31, 2018).

29.     Traffic Management is a Delaware limited liability company with its headquarters in Long Beach, California.

30.     Traffic Management may be served through its registered agent: **Corporation Service Company, 5235 North Front Street, Harrisburg, Pennsylvania 17110**.

**FLSA COVERAGE**

31.     At all relevant times, Traffic Management was an "employer" within the meaning of the FLSA. 29 U.S.C. § 203(d).

32.     At all relevant times, Traffic Management was an "enterprise" within the meaning of the FLSA. 29 U.S.C. § 203(r).

33.     At all relevant times, Traffic Management was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of the FLSA, because it had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials—such as cell phones, computers, and personal protective equipment—that have been moved in or produced for commerce. 29 U.S.C. § 203(s)(1).

34.     At all relevant times, Traffic Management's annual gross volume of sales made or business done exceeded $1,000,000 per year.

35.     At all relevant times, the Hourly Employees were Traffic Management's "employees" within the meaning of the FLSA. 29 U.S.C. § 203(e).

36.     At all relevant times, the Hourly Employees were engaged in commerce or in the production of goods for commerce.

**FACTS**

37.     Traffic Management touts that "[t]housands of employees in locations across the country using cutting-edge technology make [it] a leader in the traffic engineering industry. [It] can

produce plans of any size to keep your project moving on schedule."[3]

38.     To meet its business objectives, Traffic Management hires employees, including Plaintiffs and the other Hourly Employees, to provide traffic direction services for its clients.

39.     Spoonauer worked for Traffic Management from approximately as a traffic controller from approximately January 2023 until April 2024. Foster worked for Traffic Management as a traffic controller from March 2025 through January 2026.

40.     Spoonauer's, and Foster's, job duties included collecting iPads and radios, as well as cones, flags, and other tools and gear from Traffic Management's yard, transporting these items to worksites, setting up and coning off work sites for utility and/or construction companies or near roadways, and notifying and directing motorists driving by Traffic Management's clients' worksites. Foster and Spoonauer also drove themselves and/or other Traffic Controllers to job sites, normally in Traffic Management vehicles.

41.     Spoonauer and Foster typically worked 5-6 days a week from 8 to 18 hours a day (40 to 90 hours a workweek) "on the clock."

42.     Traffic Management paid Spoonauer approximately $16.50 an hour.

43.     Traffic Management paid Foster a rate of $17.50 and, later $18.00, an hour for non-driving time and paid him the then Virginia minimum wage ($12.43 an hour) for time spent driving to/from Traffic Management locations to/from a jobsite. It did not pay him for time he spent as a passenger on such drives.

44.     Nor did Traffic Management pay Spoonauer for time spent as a passenger.

45.     Traffic Management also failed to include the on the clock driver hours and pay when calculating Plaintiffs overtime pay meaning that when they drove they were neither paid the required overtime rate, nor paid the correct number of overtime hours.

---

[3] https://www.trafficmanagement.com/ (last visited February 23, 2026).

46.    Traffic Management similarly failed to pay overtime correctly to other Hourly Employees.

47.    The other Hourly Employees work similar schedules "on the clock" to those worked by the Plaintiffs.

48.    Traffic Management required Plaintiffs and the other Hourly Employees to report their "on the clock" hours via its timekeeping system.

49.    Traffic Management thus knows Plaintiffs, and the other Hourly Employees, regularly work 40 or more hours in a week.

50.    But Traffic Management subjected Plaintiffs to its off the clock policy.

51.    Specifically, Traffic Management required Plaintiffs to arrive at the company yard, gather traffic cones, flags, other tools and equipment, as well as iPads and radios, load these items into a company vehicle picked up from the yard, and drive with a coworker to the day's jobsite, off the clock, before their shifts.

52.    And Traffic Management required Plaintiffs to drive from the jobsite to its yard, unload and store the cones, flags, iPads, radios, etc. and drop off the company vehicle, off the clock, after their shifts.

53.    This unpaid, off the clock work is integral and indispensable to the job duties Traffic Management hired Plaintiffs to perform.

54.    For example, Plaintiffs could not perform his traffic direction job duties effectively without communicating with coworkers through the radios he picked up from the yard.

55.    And the cones were necessary for indicating traffic patterns, an integral part (if not the whole) of why clients hire Traffic Management in the first place.

56.    These integral and indispensable work duties took Plaintiffs approximately 2 hours each workday.

57.    Plaintiffs and the Hourly Employees perform their jobs under Traffic Management's supervision and use materials, equipment, and technology Traffic Management approves and supplies.

58.    Traffic Management requires Plaintiffs and the Hourly Employees to follow and abide by common work, time, pay, and overtime policies and procedures in the performance of their jobs.

59.    At the end of each pay period, Plaintiffs and the Hourly Employees receive wages from Traffic Management that are determined by common systems and methods that Traffic Management selects and controls.

60.    Traffic Management requires Plaintiffs and the Hourly Employees to record their "on the clock" hours worked using Traffic Management's timekeeping system.

61.    Traffic Management subjects Plaintiffs and the Hourly Employees to its common off the clock policy.

62.    Specifically, Traffic Management required the other Hourly Employees to arrive at the company yard, gather traffic cones, flags, other tools and equipment, as well as iPads and radios, load these items into a company vehicle picked up from the yard, and drive, as passengers, with coworkers to jobsites, off the clock, before their shifts.

63.    And Traffic Management required Plaintiffs to drive, as passengers, from the jobsite to its yard, unload and store the cones, flags, iPads, radios, etc. and drop off the company vehicle, off the clock, after their shifts.

64.    This unpaid, off the clock work is integral and indispensable to the job duties Traffic Management hired Plaintiffs to perform because transporting and utilizing equipment such as cones and flags, reviewing plans on iPads, and coordinating with coworkers through radios to keep traffic flowing smoothly and safely are inextricably intertwined and embedded in the job duties Traffic Management hired the Hourly Employees to perform.

65.     Like Plaintiffs, these integral and indispensable work duties took the other Hourly Employees approximately 10 hours to complete each workweek.

66.     Traffic Management fails to exercise its duty as Plaintiffs' and the Hourly Employees' employer to ensure these employees are not performing work that Traffic Management does not want performed before and/or after their shifts.

67.     And Traffic Management knows Plaintiffs and the other Hourly Employees routinely perform work "off the clock" before and after their shifts because Traffic Management expects and requires them to do so.

68.     Plaintiffs and the other Hourly Employees have complained to Traffic Management's management, HR, and/or supervisors about being forced to work off the clock before and after their shifts

69.     Thus, Traffic Management required, requested, suffered, or permitted Plaintiffs and the Hourly Employees to perform unpaid work before and after their shifts.

70.     Despite accepting the benefits, Traffic Management does not pay Plaintiffs and the Hourly Employees for the compensable work they perform before and after their shifts.

71.     Thus, under Traffic Management's off the clock policy, Plaintiffs and the Hourly Employees are denied overtime pay for integral and indispensable work they perform during workweeks in which they work more than 40 hours.

72.     Making matters worse, Traffic Management did not provide Spoonauer with accurate and compliant written notice of all information required by NYLL § 195(1) at the time of his hiring.

73.     Traffic Management provides similarly noncompliant wage notices to the New York Class Members.

74.     Spoonauer and the other New York Class Members were injured due to Traffic Management's failure to provide the wage notices required by NYLL § 195(1).

75.     Traffic Management also failed to provide Spoonauer accurate, itemized wage statements as required by NYLL § 195(3).

76.     Specifically, Traffic Management's itemized wage statements do not show Spoonauer's do not show all hours he worked and his gross wages actually earned.

77.     Traffic Management provides noncompliant wage statements to the other New York Class Members.

78.     Each pay period, Traffic Management provides the New York Class Members with wage statements showing inaccurate hours worked and gross wages.

79.     Traffic Management's failure to provide accurate and compliant wage notices, as required under NYLL § 195(1), caused Spoonauer and the New York Class Members to suffer informational harm and prevented them from knowing whether, and to what extent, Traffic Management underpaid them.

80.     Traffic Management's failure to provide accurate and compliant wage notices as required by NYLL § 195(1) deprived Spoonauer and the other New York Class Members of the ability to ensure Traffic Management made proper payroll tax deductions on their behalf.

81.     Traffic Management's failure to provide accurate and compliant wage notices as required by NYLL § 195(1) deprived Spoonauer and the other New York Class Members of the ability to ensure Traffic Management made proper deductions from their pay in the correct amounts.

82.     Traffic Management's failure to provide wage statements as required by NYLL § 195(3) concretely injured Spoonauer and the other New York Class Members.

83.     Traffic Management's failure prevented Spoonauer and the New York Class Members from knowing whether, and to what extent, Traffic Management underpaid them.

84.     Traffic Management's failure to provide accurate and compliant itemized wage statements prevented the New York Class Members from ensuring Traffic Management made required

payroll tax deductions.

85.    It also deprived Spoonauer and the other New York Class Members of the ability to ensure Traffic Management properly made other deductions from their wages in the correct amounts.

86.    Traffic Management's willful violations of NYLL § 195(1) and (3) prevented Spoonauer and the other New York Class Members from taking action to correct Traffic Management's NYLL violations (e.g., underpaying overtime wages) at an earlier time, resulting in numerous workweeks for which the New York Class Members were deprived of the time value of their earned wages and numerous workweeks for which they are now time-barred from recovering their earned wages, including overtime wages.

87.    Traffic Management's wage notices and itemized wage statements told the New York Class Members they had been paid all the wages they were owed when, in fact, Traffic Management owed them additional wages.

88.    Traffic Management's issuance of false, deceptive, and/or misleading wage notices and itemized wage statements concretely harmed Spoonauer and the other New York Class Members by falsely informing them they had been paid in full for their labor when, in fact, they were owed additional wages, including overtime wages.

89.    Traffic Management hid its wage violations and prevented or impeded Spoonauer and the other New York Class Members from obtaining full payment of wages owed to them in a timely fashion.

90.    Throughout their employment, the New York Class Members relied—to their detriment—on Traffic Management's representations regarding full payment of wages.

91.    Had Traffic Management provided accurate and legally compliant wage notices and itemized wage statements, Spoonauer and/or other New York Class Members would have undertaken self-advocacy and/or brought an earlier action to recover such unpaid wages.

92.     Indeed, after learning Traffic Management underpaid him, Spoonauer brought this action, albeit on a timeframe slowed by Traffic Management's misrepresentations.

93.     But for Traffic Management's false, deceptive, and/or misleading wage notices and itemized wage statements, Spoonauer and the New York Class Members would have avoided the lost time-value of their unpaid wages by recovering sooner.

94.     Put simply, had Traffic Management complied with NYLL § 195(1) and (3), the New York Class Members would have known Traffic Management owed them overtime and could have pursued payment immediately.

95.     Traffic Management's off the clock policy is made worse still by the fact that it led to Virginia Class Members not being paid their full wages in workweeks when they worked under 40 hours a week in violation of the VWPA (Va. Code 40.1-29).

96.     As set forth herein, such violations of Virginia Class Member's rights were made "knowingly" in violation of Va. Code 40.1-29(J) and (K).

## CLASS AND COLLECTIVE ACTION ALLEGATIONS

97.     Plaintiffs bring their claims on behalf of themselves and the other Hourly Employees.

98.     Traffic Management's off the clock policy and notice violations victimized Plaintiffs and the other Hourly Employees.

99.     Plaintiffs worked with other Hourly Employees who indicated they were subject to Traffic Management's off the clock policy and suffered similar notice violations.

100.     Based on their experience with Traffic Management, Plaintiffs are aware Traffic Management's off the clock policy and notice violations were imposed on other Hourly Employees.

101.     Plaintiffs and the Hourly Employees are similarly situated in the most relevant respects.

102.     Even if their precise job duties and locations might vary, these differences do not matter for the purpose of determining their entitlement to overtime wages.

103. Therefore, the specific job titles or locations of the Hourly Employees do not prevent class or collective treatment.

104. Rather, Traffic Management's off the clock policy and notice violations render Plaintiffs and the other Hourly Employees similarly situated for the purpose of determining their rights to overtime wages and statutory damages.

105. Traffic Management's records show the schedules and number of "on the clock" hours worked each week by the Hourly Employees.

106. The back wages and other damages owed to Plaintiffs and the other Hourly Employees can therefore be calculated using the same formula applied to the same records.

107. Even if the issue of damages was somewhat individual in character, the damages can be calculated by reference to Traffic Management's records, and there is no detraction from the common nucleus of liability facts.

108. Therefore, the issue of damages does not preclude class or collective treatment.

109. Plaintiffs' experiences are typical of the experiences of the other Hourly Employees.

110. Plaintiffs have no interest contrary to, or in conflict with, the Hourly Employees that would prevent class or collective treatment.

111. All the Hourly Employees share a common interest in obtaining the unpaid wages and damages owed under federal, New York, Pennsylvania, New Jersey, and Virginia law.

112. A class and collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

113. Absent this class and collective action, many Hourly Employees will not obtain redress for their injuries, and Traffic Management will reap the unjust benefits of violating the FLSA, NYLL, PMWA, WPCL, NJWHL, VWPA, and VOWA.

114. Further, even if some of the Hourly Employees could afford individual litigation, it

would be unduly burdensome to the judicial system.

115.    Concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Hourly Employees' claims.

116.    The questions of law and fact that are common to each Hourly Employee predominate over any questions affecting solely the individual members.

117.    Among the common questions of law and fact are:

    a    Did Traffic Management require the Hourly Employees to pick up, load, drop off, and store necessary equipment each workday before and after their shifts;

    b    Did Traffic Management require the Hourly Employees to pick up and drive a company vehicle from its yard to the jobsite and back with and transport coworkers each workday before and after their shifts;

    c    Did Traffic Management pay Hourly Employee drivers for drive time between Traffic Management facilities and job sites, but not pay Hourly Employee passengers for that same time;

    d    Did Traffic Management properly include drive time between Traffic Management facilities and job sites in its overtime payments to the Hourly Employees.

    e    Did Traffic Management provide accurate and complete wage notices at the beginning of New York Class Members' employment as required under NYLL § 195(1);

    f    Did Traffic Management provide the New York Class Members with accurate, itemized wage statements including the information required by NYLL § 195(3); and

- 14 -

g    Whether Traffic Management's FLSA, NYLL, PMWA, WPCL, NJWHL, VWPA, and VOWA violations were willful.

118.    There are many similarly situated Hourly Employees who have been denied overtime wages in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

119.    This notice should be sent to the Hourly Employees pursuant to 29 U.S.C. § 216(b).

120.    The Hourly Employees are known to Traffic Management, are readily identifiable, and can be located through Traffic Management's business and personnel records.

### TRAFFIC MANAGEMENT'S VIOLATIONS WERE WILLFUL, UNREASONABLE, AND NOT THE RESULT OF A BONA FIDE DISPUTE

121.    Traffic Management knew it was subject to the FLSA's, NYLL's, PMWA, NJWHL's, and VOWA's overtime provisions.

122.    Traffic Management knew the FLSA, NYLL, PMWA, NJWHL, and VOWA required it to pay non-exempt employees, including the Hourly Employees, overtime wages at rates of at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked after 40 in a workweek.

123.    Traffic Management knew it was subject to the WPCL and VWPA.

124.    Traffic Management knew the WPCL, VWPA, and VOWA required it to pay employees, including its Hourly Employees, all earned wages (including overtime) on their regular paydays and following the termination of employment.

125.    Traffic Management knew each Hourly Employee worked more than 40 hours in at least one workweek during the 6 years and 228 days before this Complaint was filed because it recorded their "on the clock" hours via its timekeeping system.

126.    The putative classes consist of at least 40 individuals.

127.     Traffic Management knew it required the Hourly Employees to perform integral and indispensable work duties off the clock, including on its premises, before and after their shifts.

128.     Traffic Management knew the Hourly Employees picked up, loaded, dropped off, and stored fundamentally necessary tools and equipment from its yard before and after their shifts, off the clock.

129.     Traffic Management further knew that it excluded driver pay from its on the clock overtime calculation.

130.     Traffic Management knew the NYLL required it to provide itemized notices regarding the timing, frequency, calculation, total amount, etc. of earned wages to the New York Class Members.

131.     Traffic Management knew the Hourly Employees were its non-exempt employees.

132.     Traffic Management's failure to pay its Hourly Employees premium overtime wages of at least 1.5 times their regular rates of pay for all hours worked in excess of 40 in a workweek and failure to provide required notice was not reasonable or in good faith.

133.     Traffic Management's failure to pay the Hourly Employees earned wages for all hours worked on regular paydays and following the termination of their employment was unreasonable.

134.     Traffic Management's failure to pay the Hourly Employees their earned wages was not the result of a *bona fide* dispute.

135.     Traffic Management knew, or showed reckless disregard for whether the conduct described in this Complaint violated the FLSA, NYLL, PMWA, WPCL, NJWHL, VWPA, and VOWA.

136.     Traffic Management knowingly, willfully, and/or in reckless disregard carried out its off the clock policy that deprived the Hourly Employees of overtime wages at the required overtime rates for all overtime hours worked and failed to provide compliant wage notices, in violation of the

FLSA and NYLL.

## COUNT I
### FAILURE TO PAY OVERTIME WAGES UNDER THE FLSA
### (FLSA COLLECTIVE)

137.    Plaintiffs bring their FLSA claims as a collective action on behalf of themselves and the other Hourly Employees.

138.    Traffic Management violated, and is violating, the FLSA by employing non-exempt employees, such as the Hourly Employees, in a covered enterprise for workweeks longer than 40 hours without paying them overtime wages at rates of at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 in a workweek.

139.    Traffic Management's unlawful conduct harmed the Hourly Employees by depriving them of the overtime wages they are owed.

140.    Accordingly, Traffic Management owes the Hourly Employees the difference between the wages actually paid and the overtime wages actually earned.

141.    Because Traffic Management showed reckless disregard for whether its off the clock policy violates the FLSA, Traffic Management owes the Hourly Employees these wages for at least the past 3 years.

142.    Traffic Management also owes the Hourly Employees an equal amount as liquidated damages.

143.    Finally, the Hourly Employees are entitled to recover all reasonable attorneys' fees and costs incurred in this action.

## COUNT II
### FAILURE TO PAY OVERTIME WAGES UNDER THE NYLL
### (NEW YORK CLASS)

144.    Spoonauer brings his NYLL claims as a class action pursuant to FED. R. CIV. P. 23.

145.    Traffic Management's conduct violated and continues to violate the NYLL and its implementing regulations. *See* NYLL §§ 190, *et seq.* and 650, *et seq.*; 12 NYCRR Part 142 *et seq.*

146.    At all relevant times, Traffic Management was subject to the NYLL because Traffic Management was (and is) an "employer" within the meaning of the NYLL. NYLL §§ 190(3) and 651(6).

147.    At all relevant times, Traffic Management employed and each New York Class Member as its covered "employees" within the meaning of the NYLL. NYLL §§ 190(2) and 651(5).

148.    The NYLL requires employers, like Traffic Management, to pay non-exempt employees, including the New York Class Members, overtime wages at rates not less than 1.5 times their regular rates of pay for all hours worked after 40 a workweek. NYLL §§ 190, *et seq.* and 650, *et seq.*; 12 NYCRR Part 142-3.2 and 142-3.14.

149.    The New York Class Members are entitled to overtime wages under the NYLL.

150.    Traffic Management violated, and is violating, the NYLL by employing the New York Class Members for workweeks longer than 40 hours without paying them overtime wages at rates of at least 1.5 times their regular rates of pay for all hours worked in excess of 40 in a workweek. *See* NYLL §§ 190, *et seq.* and 650, *et seq.*; 12 NYCRR Part 142-3.2 and 142-3.14.

151.    Traffic Management's unlawful conduct harmed the New York Class Members by depriving them of the overtime wages they are owed.

152.    Accordingly, Traffic Management owes the New York Class Members the difference between the wages actually paid and the required overtime wages actually earned, plus interest on those amounts. *See* NYLL §§ 198(1-a) and 663(1).

153.    Because Traffic Management acted willfully, without a good faith basis, and with reckless disregard of clearly applicable New York law, it is also liable to the New York Class Members for an amount equal to all their unpaid wages as liquidated damages. *See* NYLL §§ 198(1-a) and 663(1).

154.    Finally, the New York Class Members are entitled to recover all reasonable attorneys' fees and costs incurred in this action. *See* NYLL §§ 198(4) and 663(4).

**COUNT III**
**FAILURE TO PROVIDE ACCURATE ITEMIZED WAGE STATEMENTS**
**(NEW YORK CLASS)**

155.    Spoonauer brings his NYLL § 195(3) claims as a class action on behalf of himself and the other similarly situated New York Class Members pursuant to FED. R. CIV. P. 23.

156.    Traffic Management's conduct violated and continues to violate the NYLL and its implementing regulations. *See* NYLL §§ 190, *et seq.* and 650, *et seq.*; 12 NYCRR Part 142 *et seq.*

157.    At all relevant times, Traffic Management was subject to the NYLL because Traffic Management was (and is) an "employer" within the meaning of the NYLL. NYLL §§ 190(3) and 651(6).

158.    At all relevant times, Traffic Management employed Spoonauer and each New York Class Member as its covered "employees" within the meaning of the NYLL. NYLL §§ 190(2) and 651(5).

159.    Traffic Management did not provide the New York Class Members with accurate or compliant itemized wage statements as required by NYLL § 195(3).

160.    With each payment of wages, Traffic Management fails to provide the New York Class Members with an accurate statement listing the categories of information required by NYLL § 195(3):

    a.    The dates of work covered by that payment of wages;

    b.    Name of employee;

    c.    Name of all employers;

    d.    Address and phone number of each employer;

    e.    Rate or rates of pay and basis thereof, whether the employee is paid by the hour, shift, day, week, salary, piece, commission,

    or other;

  f.  Gross wages;

  g.  Deductions;

  h.  Allowances, if any, claimed as part of the minimum wage;

  i.  Net wages;

  j.  The regular hourly rate or rates of pay;

  k.  The overtime rate or rates of pay;

  l.  The number of regular hours worked; and

  m.  The number of overtime hours worked.

161. Traffic Management provided inaccurate wage statements that understate the New York Class Members' regular rates and earned overtime wages.

162. Traffic Management issued wage statements to Spoonauer and New York Class Members falsely informing them they had been paid in full and were owed no further overtime wages.

163. Traffic Management's wage statement violations injured Spoonauer and the New York Class Members.

164. Traffic Management's failure to provide accurate and compliant itemized wage statements caused the New York Class Members informational harm by preventing them from learning: (1) Traffic Management had underpaid them; (2) the extent of the underpayment; (3) whether Traffic Management made proper payroll tax deductions and other deductions on their behalf each pay period.

165. It also prevented Spoonauer and the New York Class Members from taking action to correct Traffic Management's wage and hour violations at an earlier time, resulting in both the loss of the time value of earned wages and causing other workweeks to be barred by the statute of limitations.

166. Traffic Management willfully violated NYLL § 195(3) by providing wage statements

informing Spoonauer and the New York Class Members they were paid all wages owed when, in fact, they were owed additional overtime wages.

167.    By failing to provide them with statutorily-required wage information about the wages Traffic Management owed them, Traffic Management hid its violations of the NYLL and took advantage of these employees' lack of legal sophistication.

168.    Due to these violations, Traffic Management owes Spoonauer and each of the New York Class Members $250 for each workday that the violations occurred, up to a total of $5,000 per New York Class Member, and reasonable attorneys' fees and costs incurred in this action. NYLL § 198(1-d).

**C<small>OUNT</small> IV**
**F<small>AILURE TO</small> P<small>ROVIDE</small> A<small>CCURATE</small> W<small>AGE</small>**
**N<small>OTICES</small> (N<small>EW</small> Y<small>ORK</small> C<small>LASS</small>)**

169.    Spoonauer brings his NYLL § 195(1) claims as a class action pursuant to F<small>ED</small>. R. C<small>IV</small>. P.23.

170.    Traffic Management's conduct violated and continues to violate the NYLL. *See* NYLL §§ 190, *et seq.* and 650, *et seq.*

171.    At all relevant times, Traffic Management was subject to the NYLL because Traffic Management was (and is) an "employer" within the meaning of the NYLL. NYLL §§ 190(3) and 651(6).

172.    At all relevant times, Traffic Management employed Spoonauer and each New York Class Member as its covered "employees" within the meaning of the NYLL. NYLL §§ 190(2) and 651(5).

173.    Traffic Management failed to provide Spoonauer and New York Class Members with a written notice upon hire containing the following categories of information required by NYLL § 195(1):

a.  The rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other;

b.  For non-exempt employees like Spoonauer and New York Class Members, the overtime rate of pay;

c.  Allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances;

d.  The regular pay day designated by the employer;

e.  The name of the employer;

f.  Any "doing business as" names used by the employer;

g.  The physical address of the employer's main office or principal place of business, and a mailing address is different;

h.  The telephone number of the employer; and

i.  Regular hourly rate and overtime rate of pay.

174. Instead, Traffic Management's wage notices falsely "informed" Spoonauer and New York Class Members of understated (or left unstated) regular hourly rates of pay and overtime rates of pay, and the basis thereof, that disguised the fact Traffic Management underpaid overtime wages to them.

175. Traffic Management's failure to provide compliant notices injured the New York Class Members.

176. Traffic Management's failure to provide accurate and compliant wage notices as required under NYLL § 195(1) prevented Spoonauer and the New York Class Members from knowing the regular rates and overtime rates of pay they were owed.

177. Traffic Management's failure to provide accurate and compliant wage notices prevented the New York Class Members from: (1) ensuring Traffic Management made proper payroll

tax deductions on their behalf each pay period; (2) ensuring Traffic Management made other required deductions in the correct amounts each pay period; (3) taking action to correct Traffic Management's wage and hour violations at an earlier time (resulting in multiple workweeks becoming time-barred).

178. Traffic Management hiding its violations of the NYLL and took advantage of these employees' lack of legal sophistication by failing to provide them with statutorily-required wage information.

179. Traffic Management harmed the New York Class Members by issuing false, deceptive, and/or misleading wage notices.

180. Had Traffic Management provided accurate and legally compliant wage notices to Spoonauer, Spoonauer would have acted sooner, whether through self-advocacy and/or filing an action for unpaid wages.

181. Traffic Management's wage notice violations cost the New York Class Members the time-value of their unpaid wages, which could have been recovered sooner.

182. Due to these violations, Traffic Management owes Spoonauer and each New York Class Member $250 for each workday that the violations occurred, up to a total of $5,000 per New York Class Member, and reasonable attorneys' fees and costs incurred in this action. NYLL § 198(1-d).

<u>COUNT V</u>
FAILURE TO PAY OVERTIME WAGES UNDER THE PMWA
(PENNSYLVANIA CLASS)

183. Plaintiffs bring their PMWA claim as a class action on behalf of themselves and the other Pennsylvania Class Members pursuant to FED. R. CIV. P. 23.

184. The conduct alleged violates the PMWA (43 PA. STAT. §§ 333.101, *et seq.*)

185.     At all relevant times, Traffic Management was subject to the PMWA because Traffic Management was (and is) an "employer" within the meaning of the PMWA. *See* 43 PA. STAT. § 333.103(g).

186.     At all relevant times, Traffic Management employed each Pennsylvania Class Member as its covered "employees" within the meaning of the PMWA. *See* 43 PA. STAT. § 333.103(h).

187.     The PMWA requires employers like Traffic Management to pay non-exempt employees like the Pennsylvania Class Members overtime at a rate not less than 1.5 times the regular rate of pay for all hours worked after 40 in a workweek. 43 PA. STAT. § 333.104(c); *see* 34 PA. CODE §§ 231.41-43.

188.     Traffic Management violated, and is violating, the PMWA by employing the Pennsylvania Class Members for workweeks in excess of 40 hours without paying them overtime wages at rates not less than 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 in a workweek. *See* 43 PA. STAT. § 333.104(c); *see also* 34 PA. CODE §§ 231.41-43.

189.     Traffic Management's unlawful conduct harmed the Pennsylvania Class Members by depriving them of the overtime wages they are owed.

190.     Accordingly, Traffic Management owes the Pennsylvania Class Members the difference between the rate actually paid and the required premium overtime rate plus prejudgment interest and all available penalty wages. *See* 43 PA. STAT. § 333.113.

191.     Finally, the Pennsylvania Class Members are entitled to recover their reasonable attorneys' fees and costs incurred in this action. *See* 43 PA. STAT. § 333.113.

## COUNT VI
### FAILURE TO PAY ALL WAGES EARNED UNDER THE WPCL
### (PENNSYLVANIA CLASS)

192.     Plaintiffs bring their WPCL claims as a class action on behalf of themselves and the other Pennsylvania Class Members pursuant to FED. R. CIV. P. 23.

193.     Traffic Management's conduct violates the WPCL. 43 PA. STAT. §§ 260.1, *et seq.*

194.     At all relevant times, Traffic Management was subject to the WPCL because Traffic Management was (and is) an "employer" within the meaning of the WPCL. *See* 43 PA. STAT. § 260.2a.

195.     At all relevant times, Traffic Management employed each Pennsylvania Class Member as its covered "employees" within the meaning of the WPCL.

196.     The WPCL requires employers, like Traffic Management, to pay employees, including the Pennsylvania Class Members, all wages (including overtime) earned, due, and owing to them on their regular payday(s) and following the termination of their employment. 43 PA. STAT. §§ 260.3 and 260.5.

197.     Traffic Management violated, and is violating, the WPCL by depriving the Pennsylvania Class Members of all wages earned, due, and owing to them on their regular paydays and/or following the termination of their employment. *See* 43 PA. STAT. §§ 260.3 and 260.5.

198.     The Pennsylvania Class Members' earned wages have remained unpaid for more than 30 days from the date they were earned, due, and payable.

199.     Traffic Management's unlawful conduct harmed the Pennsylvania Class Members by depriving them of their earned wages.

200.     Traffic Management's refusal to pay the Pennsylvania Class Members all their earned wages was not the result of a *bona fide* dispute.

201.     Rather, Traffic Management knowingly failed to pay the Pennsylvania Class Members earned wages.

202.     Accordingly, Traffic Management owes the Pennsylvania Class Members their unpaid earned wages plus prejudgment interest and all available penalty wages. *See* 43 PA. STAT. § 260.9a.

203.    Traffic Management also owes the Pennsylvania Class Members liquidated damages in an amount equal to 25% of their unpaid wages or $500, whichever is greater. *See* 43 PA. STAT. § 260.10.

204.    Finally, the Pennsylvania Class Members are entitled to recover their attorney's fees and costs. *See* 43 PA. STAT. § 260.9a(f).

<u>COUNT VII</u>
FAILURE TO PAY OVERTIME WAGES UNDER THE NJWHL
(NEW JERSEY CLASS)

205.    Spoonauer brings his NJWHL claim on behalf of himself and the other New Jersey Class Members pursuant to FED. R. CIV. P. 23.

206.    Traffic Management's alleged conduct violates the NJWHL (N.J.S.A. 34:11-56a, *et seq.*).

207.    At all relevant times, Traffic Management was subject to the NJWHL because Traffic Management was (and is) an "employer" within the meaning of the NJWHL. *See* N.J.S.A. 34:11-56a1(g).

208.    At all relevant times, Traffic Management employed Spoonauer and the other New Jersey Class Members as its covered "employees" within the meaning of the NJWHL. *See* N.J.S.A. 34:11-56a1(f) and (h).

209.    The NJWHL requires employers, like Traffic Management, to pay non-exempt employees, including Spoonauer and the other New Jersey Class Members, overtime wages at rates not less than 1.5 times their regular rates of pay for all hours worked after 40 in a workweek. *See* N.J.S.A. 34:11-56a4(b).

210.    Spoonauer and the other New Jersey Class Members are entitled to overtime wages under the NJWHL.

211.    Traffic Management violated, and is violating, the NJWHL by employing the New Jersey Class Members for workweeks longer than 40 hours without paying such employees overtime

wages at rates of at least 1.5 times their regular rates of pay for all hours worked after 40 in a workweek. *See* N.J.S.A. 34:11-56a4(b).

212.    Traffic Management's unlawful conduct harmed the New Jersey Class Members by depriving them of the overtime wages they are owed.

213.    Accordingly, Traffic Management owes the New Jersey Class Members the difference between the wages actually paid and the overtime wages actually earned, which remain outstanding. *See* N.J.S.A. 34:11-56a25.

214.    In violating the NJWHL, Traffic Management acted willfully, without a good faith basis, and with reckless disregard of clearly applicable New Jersey law.

215.    Thus, Traffic Management is also liable to the New Jersey Class Members for an additional amount equal to 200% of their unpaid wages as liquidated damages. *See* N.J.S.A. 34:11-56a25.

216.    Finally, the New Jersey Class Members are entitled to recover all reasonable attorneys' fees, costs, and expenses incurred in this action. *See* N.J.S.A. 34:11-56a25.

<u>COUNT VIII</u>
FAILURE TO PAY ALL WAGES EARNED UNDER THE VWPA
(VIRGINIA CLASS)

217.    Foster brings his VWPA claim on behalf of himself and the other Virginia Class Members pursuant to FED. R. CIV. P. 23.

218.    At all relevant times, Traffic Management was an "employer" subject to the VWPA.

219.    At all relevant times, Foster and the Virginia Class Members were "employees" of Traffic Management under the VWPA.

220.    Traffic Management violated the VWPA by failing to Pay Foster and the Virginia Class Members their wages for all hours worked as alleged herein.

221.    Traffic Management knew that Foster and the Virginia Class Members were not paid for all hours worked. Traffic Management knowingly and/or willfully failed to pay the Virginia Class Members all wages due.

222.    Pursuant to Va. Code § 40.1-29(J), Foster and the Virginia Class members are entitled to recover payment of their unpaid wages, an equal amount of liquidated damages, prejudgment interest, and attorney's fees.

223.    Further, Traffic Management knowingly failed to pay such wages, thus entitling Foster and the Virginia Class Members to recover triple damages.

**COUNT IX**
**FAILURE TO PAY OVERTIME WAGES UNDER VOWA**
**(VIRGINIA CLASS)**

224.    Foster brings his VOWA claim on behalf of himself and the other Virginia Class Members pursuant to FED. R. CIV. P. 23.

225.    At all relevant times, Traffic Management was an "employer" subject to VOWA.

226.    At all relevant times, Foster and the Virginia Class Members were non-exempt "employees" of Traffic Management under VOWA.

227.    Foster and the Virginia Class Members were directed and/or required by Traffic Management to work, and did work, over forty (40) hours in one or more individual workweeks.

228.    Traffic Management violated VOWA by failing to pay overtime to Foster and the Virginia Class Members, at one-and-one-half times their regular rate of pay when they worked over forty (40) hours in one or more individual workweeks.

229.    Traffic Management's actions were willful and knowing.

230.    Foster and the Virginia Class Members are entitled to recover payment of their unpaid overtime wages, an equal amount of liquidated damages, prejudgment interest, and attorneys' fees.

**JURY DEMAND**

231.    Plaintiffs demand a trial by jury.

## RELIEF SOUGHT

Plaintiffs, individually and on behalf of the other Hourly Employees, seek the following relief:

   a.   An Order designating this lawsuit as a collective action and authorizing notice to the Hourly Employees allowing them to join this action by filing written consents;

   b.   An Order(s) certifying the putative classes;

   c.   An Order(s) appointing Plaintiffs and his counsel to represent the interests of the other Hourly Employees;

   d.   An Order finding Traffic Management liable to Plaintiffs and the other Hourly Employees for unpaid overtime wages owed under the FLSA, plus liquidated damages in an amount equal to their unpaid wages;

   e.   An Order finding Traffic Management liable to Spoonauer and the New York Class Members for all unpaid overtime wages and wage statement recovery owed under the NYLL, plus liquidated damages in an amount equal to their unpaid wages, and all statutory damages owed;

   f.   An Order finding Traffic Management liable to the New Jersey Class Members for their unpaid wages under the NJWHL, plus damages in an amount equal to 200% of their unpaid wages;

   g.   An Order finding Traffic Management liable to the Pennsylvania Class Members for unpaid overtime wages owed under the PMWA, plus all available penalty wages;

   h.   An Order finding Traffic Management liable to the Pennsylvania Class Members for unpaid earned wages owed under the WPCL plus liquidated

damages in an amount equal to the greater of 25% of their unpaid wages or $500;

i.   An Order finding Traffic Management liable to the Virginia Class Members for unpaid overtime and regular wages owed under the VWPA and VOWA, plus all available penalty wages, liquidated or treble damages, interest, and attorneys' fees.

j.   A Judgment against Traffic Management awarding Plaintiffs and the Hourly Employees all their unpaid wages, liquidated damages, statutory damages, penalty wages, and any other applicable penalties available under the FLSA, NYLL, PMWA, WPCL, NJWHL, VWPA, and/or VOWA;

k.   An Order awarding attorneys' fees, costs, and expenses to the Hourly Employees;

l.   Pre- and post-judgment interest at the highest applicable rates; and

m.   Such other and further relief as may be necessary and appropriate.

Dated: February 27, 2026                    Respectfully submitted,

JOSEPHSON DUNLAP LLP

By: /s/ Edmund C. Celiesius
Edmund C. Celiesius
PA ID No. 326197
Michael A. Josephson
PA ID No. 308410
Andrew W. Dunlap*
TX Bar No. 24078444
JOSEPHSON DUNLAP LLP
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Phone: (713) 352-1100
Fax: (713) 352-3300
mjosephson@mybackwages.com
adunlap@mybackwages.com

Richard J. (Rex) Burch*
TX Bar No. 24001807
**BRUCKNER BURCH PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
Phone: (713) 877-8788
Fax: (713) 877-8065
rburch@brucknerburch.com

Brittany M. Haddox*
(VSB No. 86416)
**HADDOX LAW**
1203 Texas Street
Salem, VA 24153
Telephone: 540-765-4284
Facsimile: 540-380-0065
Email: brittany@haddox.law

Zev H. Antell*
(VSB No. 74634)
**BUTLER CURWOOD, PLC**
140 Virginia Street, Suite 302
Richmond, Virginia 23219
Telephone: (804) 648-4848
Facsimile: (804) 237-0413
Email: zev@butlercurwood.com
*Pro hac vice applications forthcoming*

**ATTORNEYS FOR SPOONAUER, FOSTER,
AND THE HOURLY EMPLOYEES**